## VAN v ZAHORIK

Docket No. 111254. Argued March 9, 1999 (Calendar No. 2). Decided July 7, 1999.

Scott Van filed a petition in the Menominee Circuit Court to establish his paternity of the two minor children of Mary Zahorik. Ms. Zahorik moved for summary disposition under MCR 2.116(C)(8), arguing that Mr. Van was not the biological father of either child and could not be an "equitable parent" to them because he and Ms. Zahorik had never been married. He conceded that he was not the biological father of the children, but argued that he was an equitable parent and that Ms. Zahorik should be estopped from denying that he is the father of the children. The court, Francis D. Brouillette, J., granted summary disposition for Ms. Zahorik, noting that public policy favored marriage and that the doctrines of equitable estoppel, equitable parenthood, and equitable adoption require the parties to have been married. The Court of Appeals, MURPHY, P.J., and BANDSTRA, J. (HOOD, J., concurring in part and dissenting in part), affirmed. 227 Mich App 90 (1997) (Docket No. 199146).

In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER, and Justices CORRIGAN and YOUNG, the Supreme Court *held*:

The Legislature, not the judiciary, is the appropriate entity to weigh the public policy issues involved in creating or extending parental rights to persons with no biological or marital link to a child. Therefore, the doctrines of equitable parenthood or equitable estoppel outside the context of marriage will not be extended.

1. The Legislature has provided a comprehensive statutory scheme to deal with issues pertaining to parental rights in the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* The act, which occupies the field of child custody, includes no provisions that would allow a person to pursue a custody action as a parent under a theory of equitable parenthood or equitable estoppel. The judiciary is not the proper entity to create new rights or extend theories to reach new situations. Rather, the creation and extension of rights relating to child custody clearly is the province of the Legislature.

2. The doctrine of equitable parenthood does not apply in this case. By its terms, the doctrine applies, upon divorce, to a child

born or conceived during a marriage. Mr. Van and Ms. Zahorik were never married. The present custody dispute is not in the context of a divorce, and the children were not born or conceived during marriage. Likewise, the plaintiff's equitable estoppel claim fails as a matter of law. The doctrine has been applied repeatedly to estop a husband from denying paternity of a child born during marriage, but of whom he is not the biological father. The judiciary is not the appropriate entity to extend a doctrine rooted in marriage to cover situations where there is no marriage.

Affirmed.

Justice BRICKLEY, joined by Justice CAVANAGH, dissenting, stated that on this record, the plaintiff has a legal stake in continuing the relationship he began with the children from the time of their birth. The majority's approach is particularly inadequate, as it devalues the importance of the child's personal relationship with the putative father. The sexual relationships or the marital status of the parties should be considered, if at all, during a best interests hearing conducted by the circuit court pursuant to MCL 722.23; MSA 25.312(3). The issue is the best interests of these children and the role of the court in protecting them.

The Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, does not define the term "parent," nor does it place a clear limitation on the right of biological strangers asserting parental rights from bringing custody actions. In the absence of such a definition, the plaintiff cannot be transformed into a third party. The Legislature has not limited the status of legal parent to those with a biological, adoptive, or marital tie to a child, nor is there any indication that it intended that the Child Custody Act supplant or preempt the subject of visitation or the equitable powers of the circuit court to determine visitation under circumstances not expressly included within the statute. Section 6 provides that the act is equitable in nature and is to be liberally construed. The best interests factors set forth in § 3 represent an equitable standard providing courts great latitude in protecting children, and § 5 clearly articulates a policy directing a court to consider the matters before it from the child's perspective.

Granting the plaintiff relief at this juncture does not mandate access to the children. To the contrary, the decision to grant or deny visitation is the province of the circuit court, and only after deliberate consideration of what is in the best interests of the children. The equitable parenthood doctrine best serves the child's interests by focusing on two criteria: the nonbiological parent's actual performance of parenting functions and the child's view of that adult as a parent. Moreover, equitable parenthood permits a

court to protect the interests of a biological parent's autonomy by focusing on the actions and intent of that parent in creating a parental relationship.

Justice KELLY, dissenting, stated that the plaintiff should be found to be the equitable parent of the children, and the case should be remanded to the trial court with instructions to decide appropriate custody and parenting time, following its determination of the children's best interests.

The Child Custody Act explicitly provides that it is equitable in nature and that its provisions are to be liberally construed. A liberal construction of the act supports a finding that the Supreme Court is well within its power to expand the equitable parenthood doctrine to a situation like that presented in this case. The plain language of MCL 722.23; MSA 25.312(3) and MCL 722.27(1); MSA 25.312(7)(1), in conjunction with MCL 722.26; MSA 25.312(6), demonstrates that the Legislature fully recognized the courts of Michigan as being necessary to defining the process. The Legislature is ill-equipped to deal with the myriad situations in which children find themselves. It has long been a foundational tenet of American jurisprudence that, when legal remedies prove inadequate to solve a problem, society looks to the doctrine of equity and the courts.

The doctrine of equitable parenthood should be expanded to cover the circumstances of this case. The plaintiff considers the children to be his. Until March of 1996, he was the only father the children had ever known. He obviously desires to continue to exercise the rights afforded a parent, having been actively involved in their lives since birth. Moreover, the defendant encouraged the development of a parent-child relationship by filing a paternity action naming the plaintiff as the father of both children, and stated under oath that he was the father. The children bear the plaintiff's name, and there is every indication that he is most willing to continue to support the children, both financially and emotionally.

*Geoffrey A. Sparks* for plaintiff-appellant.

*Jonathan P. Barstow* for defendant-appellee.

Amici Curiae:

*John Forczak* for Children's Law Council for the Children's Law Section of the State Bar of Michigan.

*Katherine L. Barnhart, P.C.* (by *Karen S. Sendelbach*), for Family Law Council for the Family Law Section of the State Bar of Michigan.

TAYLOR, J. At issue is whether a person with a long-standing relationship to a child, but who is not a biological or legal parent of the child and not related by marriage to the child's biological parent, may pursue parental rights with the child under a theory of equitable parenthood or equitable estoppel. We conclude that plaintiff fails to state a claim to pursue parental rights with respect to the two children at issue under either theory, and, accordingly affirm the judgment of the Court of Appeals, which affirmed the trial court's grant of defendant's motion for summary disposition.

### FACTS AND PROCEEDINGS

Plaintiff Scott Van and defendant Mary Zahorik cohabited from 1986 to 1991 but were never married. Mr. Van claims that he and Ms. Zahorik continued their relationship for several years after they stopped living together. Ms. Zahorik had two children in the course of this relationship; one in 1989 and the other in 1993. Mr. Van alleges that Ms. Zahorik informed him that he was the father of the children. He believes that he was named as the father on the birth certificates of both children. He claims that he cared for and financially supported the children both during and after his relationship with Ms. Zahorik.

As of March 21, 1996, when Mr. Van started a relationship with another woman, Ms. Zahorik refused to allow Mr. Van to see the children. However, on March 25, 1996, Ms. Zahorik filed a paternity complaint against Mr. Van in which she alleged that he

was the father of both children. Ms. Zahorik apparently dismissed this action. On July 26, 1996, Mr. Van filed a petition to establish paternity in which he alleged that he "believed and continues to believe he is the father" of the two children. On August 22, 1996, Ms. Zahorik filed a motion for summary disposition under MCR 2.116(C)(8), in which she argued that Mr. Van was not the biological father of either child[1] and could not be an "equitable parent" to them because Mr. Van and Ms. Zahorik were never married. In response, Mr. Van conceded that blood testing showed that he was not the biological father but argued that he was an "equitable parent" and that Ms. Zahorik was equitably estopped from denying that he is the father. The trial court granted Ms. Zahorik's motion for summary disposition. The trial court indicated that its ruling turned on two factors: 1) that Mr. Van apparently was not the biological father of the children, and 2) that Mr. Van and Ms. Zahorik were never married. The Court noted that Michigan's public policy favored marriage and concluded that the doctrines of equitable estoppel, equitable parenthood, and equitable adoption require marriage.

The Court of Appeals affirmed in a split decision. 227 Mich App 90; 575 NW2d 566 (1997). The majority noted that Michigan's public policy favors marriage and that the Legislature has enacted "a comprehensive statutory scheme dealing with issues such as the one in the case at bar." *Id.* at 96, 99. It held at 99:

---

[1] DNA test results dated September 1996 and January 1997 indicate that two other men are the biological fathers of the two children at issue. Orders of filiation and support were entered with respect to the biological fathers in February 1997 and August 1997.

In sum, the equitable parent doctrine has previously been applied only in situations where a child was born or conceived during a marriage, to convey equitable parenting status on a husband who was not the biological father of the child. Because of the magnitude of the policy considerations involved in extending application of the doctrine outside such circumstances and the presence of a complex statutory scheme dealing with such issues, we defer to the Legislature and decline to accord plaintiff equitable parent status.

It also rejected Mr. Van's equitable estoppel claim. It acknowledged that "[e]quitable estoppel can be used to estop a 'father' who is not biologically related to a child from denying responsibilities associated with paternity." *Id.* at 100. However, it concluded at 101-102:

[I]n the case at bar we are asked to apply equitable estoppel against a natural parent to allow a third party parental visitation rights. There is no authority requiring us to apply equitable estoppel in such a manner, and out of judicial restraint, we refuse to do so. While plaintiff's argument that, if he theoretically could be estopped from denying a support obligation, he should have the right to visitation is sound, and there may be some implicit relationship between the duty to support and the right to visitation, *Atkinson* [*v Atkinson*, 160 Mich App 601, 609; 408 NW2d 516 (1987)], we feel that in light of the policy considerations at issue, it is necessary to stop the expanding application of equitable estoppel and the corresponding decay of the equitable parent doctrine. Such a holding may seem arbitrary, but we feel strongly that such action is necessary to prevent further, improper, judicial intrusion into this legislative policy arena. As a result, we decline to apply equitable estoppel in the case at bar.

The majority further noted that equitable estoppel is not itself a cause of action and provides no remedy. *Id.* at 102. It concluded that Mr. Van improperly

attempted to assert equitable estoppel as a cause of action. *Id.*

In a separate opinion, Judge HOOD concurred in the majority's rejection of Mr. Van's equitable parenthood claim, but dissented from its rejection of his equitable estoppel claim. He stated that under *Guise v Robinson*, 219 Mich App 139; 555 NW2d 887 (1996), Mr. Van would be estopped from denying liability for support payments. 227 Mich App 106. He concluded:

> I respectfully submit that it would be inequitable to hold that plaintiff could be liable for support payments but could not enjoy the benefits of visitation because he is not related to the children by blood. Defendant should be bound by the same rules of equitable estoppel as plaintiff.
>
> *            *            *
>
> I would hold that defendant should be equitably estopped from contesting plaintiff's rights to visit the children. [*Id.*]

This Court granted leave to appeal. 458 Mich 865 (1998).

### STANDARD OF REVIEW

The applicability of the doctrines of equitable parenthood or equitable estoppel arose in the context of Ms. Zahorik's motion for summary disposition pursuant to MCR 2.116(C)(8). This Court reviews rulings on summary disposition motions de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

> MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiff's claim for relief.

DISCUSSION

We begin with the premise that child custody disputes raise important public policy issues. We agree with the Court of Appeals majority, which stated:

> As a general rule, making social policy is a job for the Legislature, not the courts. See *In re Kurzyniec Estate*, 207 Mich App 531, 543; 526 NW2d 191 (1994). This is especially true when the determination or resolution requires placing a premium on one societal interest at the expense of another: "The responsibility for drawing lines in a society as complex as ours—of identifying priorities, weighing the relevant considerations and choosing between competing alternatives—is the Legislature's, not the judiciary's." *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979). [227 Mich App 95.]

Specifically, this Court has indicated that the public policy issues related to child custody disputes are to be resolved by the Legislature, not the judiciary:

> We are mindful of the extensive writings with regard to parental rights, the "best interests of the child" standard, "psychological parents," and the arguments, pro and con, for creating third-party rights to custody. We are also aware of the constitutional issues raised by the creation of third-party rights to custody. However, we are not in a position to make such policy judgments, especially in light of the fact that the Legislature appears to have chosen a different course in its consideration of the competing interests involved. Therefore, we leave to the Legislature the task of creating substantive rights, subject to any constitutional restraints, if it finds that public policy so requires. [*Bowie v Arder*, 441 Mich 23, 46-47; 490 NW2d 568 (1992).]

Further, we agree with the Court of Appeals observation that the Legislature has provided a comprehensive statutory scheme to deal with such issues in the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* See 227 Mich App 99. MCL 722.24(1); MSA

25.312(4)(1) states that in all actions involving dispute of a minor child's custody, courts are to declare children's inherent rights and establish the rights and duties regarding custody, support and parenting time "in accordance with this act." Therefore, the Child Custody Act is the exclusive means for pursuing such rights. In addition to addressing child custody disputes between parents and between a parent and state agency, the Child Custody Act specifically addresses the rights of certain other parties, e.g., legal guardians and grandparents. MCL 722.26b; MSA 25.312(6b), MCL 722.27b; MSA 25.312(7b). However, none of these specific provisions cover Mr. Van's circumstance.

For purposes of the Child Custody Act, Mr. Van is a third person. MCL 722.22(f); MSA 25.312(2)(f) defines "[t]hird person" as "any individual other than a parent." By his own admission, Mr. Van is not a biological parent of the children at issue. Apparently because he believed himself to be the biological father until shortly before he filed the present action, he has not pursued other means to become a legal parent, e.g., adoption. Because he is neither a biological nor legal parent, Mr. Van is a third person under the Child Custody Act. MCL 722.26c; MSA 25.312(6c) articulates circumstances under which a third person may bring an action for custody of a child.[2] The pres-

---

[2] Section 6c states in pertinent part:

(1) A third person may bring an action for custody of a child if the court finds either of the following:

(a) Both of the following:

(i) The child was placed for adoption with the third person under the adoption laws of this or another state, and the placement order is still in effect at the time the action is filed.

ent matter clearly does not fit within these parameters. Accordingly, under the terms of the Child Custody Act, Mr. Van, a third person, is ineligible to bring an action to pursue parental rights here.

Further, because Mr. Van is neither a biological parent nor a legal parent of the children at issue, his claim is essentially based on the fact that the children lived with him. This Court has repeatedly held that a third party does not gain standing to proceed under the Child Custody Act by virtue of the child having resided with the third party. *Bowie, supra* at 27; *In re Clausen,* 442 Mich 648, 682; 502 NW2d 649 (1993).

Perhaps in recognition of his inability to proceed under the Child Custody Act as a third person, Mr. Van alleges that he is a parent under an equitable parent theory or by operation of equitable estoppel. If he were declared a parent under either theory, he would presumably be able to proceed under the Child Custody Act as a parent, rather than as a third person. The primary obstacle to his approach is that the Child Custody Act does not recognize these theories. It simply includes no provisions that would allow a person to pursue a custody action as a "parent" under a theory of equitable parenthood or equitable estoppel.

---

(ii) After the placement, the child has resided with the third person for a minimum of 6 months.

(b) All of the following:

(i) The child's biological parents have never been married to one another.

(ii) The child's parent who has custody of the child dies or is missing and the other parent has not been granted legal custody under court order.

(iii) The third person is related to the child within the fifth degree by marriage, blood, or adoption.

In the context of a subject matter fraught with public policy implications and the Legislature's occupation of the field of child custody with the promulgation of the Child Custody Act, the judiciary is not the proper entity to create new rights or extend theories to reach new situations. The creation and extension of rights relating to child custody matters is clearly the province of the Legislature, not the judiciary.

It is within this context that we address this matter. The specific issues before us are: 1) whether to extend equitable parenthood outside the context of marriage, and 2) whether to extend equitable estoppel outside the context of marriage to estop Ms. Zahorik from denying that Mr. Van is an equitable parent.

### A. EQUITABLE PARENTHOOD

The equitable parent doctrine was announced in *Atkinson v Atkinson, supra* at 608-609:

> Therefore, we adopt the doctrine of equitable parent and find that a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support.

By its terms, this doctrine applies, upon divorce, with respect to a child born or conceived during the marriage. Here, Mr. Van and Ms. Zahorik were never married. The present custody dispute is not in the context of a divorce, and the children at issue were not born or conceived during marriage. Accordingly,

the doctrine of equitable parenthood would not apply to the present case.

Mr. Van asks this Court to extend the doctrine outside the context of marriage. As indicated above, the extension of substantive rights regarding child custody implicates significant public policy issues and is within the province of the Legislature, not the judiciary. Accordingly, the primary reason we will not extend this theory here is that the Child Custody Act, which occupies the field of child custody, does not recognize such a theory.[3]

---

[3] The dissents correctly observe that the Child Custody Act is equitable in nature and that the courts are entrusted with applying it to the myriad factual circumstances in which child custody matters arise. On the basis of this broad overview, the dissenters would find this to be a factual circumstance where the Child Custody Act provides authority for intervention. This is incorrect, however, because this dispute is not one cognizable under the Child Custody Act, no matter how broadly one chooses to view it. There is, in this case, no active custody dispute between Ms. Zahorik and the biological fathers of the children. Thus, the Child Custody Act is not implicated on the basis of ongoing litigation. Moreover, Mr. Van is unable to create a child custody dispute under the Child Custody Act himself, because the act includes no provision that, even if "liberally construed" as the dissents suggest, would recognize Mr. Van as a parent eligible to dispute custody and pursue parental rights thereunder. There is then no viable route under the Child Custody Act that will give Mr. Van a remedy. This is the end of it unless, or until, the Legislature, the body charged and equipped to decide such complicated public policy issues, chooses to revisit the Child Custody Act so as to amend it to reach Mr. Van's circumstance.

Further, in his dissent, Justice BRICKLEY inaccurately contends that we find that "Michigan's public policy favoring the institution of marriage supersedes the Legislature's express directive that the 'best interests' of the child control" and that we elevate marriage as the "sole relevant consideration." *Post* at 341-342. Throughout this opinion, we state that the primary barrier to Mr. Van's claim is that the Child Custody Act, which occupies the field of child custody, does not recognize equitable parenthood or parenthood by estoppel. The fact that Mr. Van and Ms. Zahorik never married has no bearing on this rationale. We specifically note that the present case does not raise the issue of the viability of these doctrines in the context of marriage and that we accordingly leave that issue for another day. Our discussion about Michigan's public policy favoring marriage is simply

Further, taking a doctrine rooted in marriage and extending it to persons who were never married would have repercussions on the institution of marriage. Michigan's public policy favors marriage. *McCready v Hoffius*, 459 Mich 131, 140; 586 NW2d 723 (1998), vacated in part on other grounds 459 Mich 1235 (1999).[4] In *Carnes v Sheldon*, 109 Mich App 204, 216; 311 NW2d 747 (1981), the Court of Appeals quoted the Illinois Supreme Court opinion in *Hewitt v Hewitt*, 77 Ill 2d 49, 58; 394 NE2d 1204 (1979), which thoughtfully addressed the propriety of the judiciary weighing the equities in claims between cohabitants:

> "There are major public policy questions involved in determining whether, under what circumstances, and to what extent it is desirable to accord some type of legal status to claims arising from such relationships. Of substantially greater importance than the rights of the immediate parties is the impact of such recognition upon our society and the institution of marriage. Will the fact that legal rights closely resembling those arising from conventional marriages can be acquired by those who deliberately choose to enter into what have heretofore been commonly referred to as 'illicit' or 'meretricious' relationships encourage formation of such relationships and weaken marriage as the foundation of our family-based society? In the event of death shall the survivor have the status of a surviving spouse for purposes of inheritance, wrongful death actions, workmen's compensation, etc.? And still more importantly: what of the children born of such relationships? What are their support and inheritance rights and by what standards are custody

---

a secondary rationale in response to the argument that these common-law doctrines should be extended outside the scope of marriage.

[4] Indeed, this public policy is deeply entrenched in our law. As early as 1901, and in an unbroken series of cases, it has been held to be the policy of this state. See, e.g., *Wagoner v Wagoner*, 128 Mich 635; 87 NW 898 (1901); *May v Meade*, 236 Mich 109; 210 NW 305 (1926). Moreover, there can be no other understanding of the Legislature's action in abolishing common-law marriage in 1957. MCL 551.2; MSA 25.2.

questions resolved? What of the sociological and psycholog-
ical effects upon them of that type of environment? Does
not the recognition of legally enforceable property and cus-
tody rights emanating from nonmarital cohabitation in prac-
tical effect equate with the legalization of common law
marriage . . . ?"

Here, the Court of Appeals correctly observed that a
relationship that does not constitute a legal marriage
does not give rise to property rights between the par-
ties, and, similarly, that a court should not be
unmindful of the role of our Legislature concerning
access to children on the periphery of such relation-
ships. It opined:

> [I]f this Court [in *Carnes, supra*] was struck by the mag-
> nitude of the public policy questions arising from property
> disputes in cohabitation situations, there can be no doubt
> that questions pertaining to the best interests of children in
> cohabitation situations should be left to the legislative pro-
> cess, especially if one of the cohabitants seeking custody or
> visitation is not biologically related to the child. [227 Mich
> App 97.]

We hold that because the requested extension of the
equitable parent doctrine would affect the state's pub-
lic policy in favor of marriage, the Legislature is
clearly the appropriate entity to consider this issue.

Finally, we note that the strongest rationales under-
girding the equitable parenthood doctrine within mar-
riage relate to reinforcement of the importance of
marriage and legitimacy. These important policies can
provide no justification for, and in fact are antitheti-
cal to, the extension of the doctrine outside the con-
text of marriage. The *Atkinson* Court relied on the
doctrine of "equitable adoption," which itself is pre-
mised on the marriage relationship as articulated in

the intestate succession statute, MCL 700.111; MSA 27.5111.[5] Section 111 states in pertinent part:

> (2) If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for all purposes of intestate succession. . . .
>
> (3) Only the person presumed to be the natural parent of a child under subsection (2) may disprove any presumption that may be relevant to the relationship, and this exclusive right to do so terminates upon the death of the presumed parent.

The *Atkinson* Court opined, "It is only logical that a person recognized as a natural parent in death should have the same recognition in life." *Id.* at 611. In addition, we note that the equitable parenthood doctrine, as set forward in *Atkinson,* is consistent with the presumption that children born during a marriage are legitimate. While this Court, in *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977), discontinued adherence to "Lord Mansfield's Rule" (which barred a husband or wife from testifying about nonaccess to each other), it reiterated that a child is "guarded by the still viable and strong, though rebuttable, presumption of legitimacy." *Id.* at 636. This presumption provides an additional basis for the equitable parent doctrine. The rationales provide a sound basis for equitable parenthood in the context of marriage because they are bottomed in statute and consistent with this state's public policy in favor of marriage and legiti-

---

[5] The *Atkinson* Court also offered several other rationales for adopting the doctrine. Among its rationales were that the Child Custody Act is equitable in nature, that equitable parenthood was the "logical extension" of case law that utilized equitable estoppel to require a person who was not a biological father to be considered a parent against his will, and that equitable parenthood would be in the child's best interest. *Id.* at 609-611.

macy.[6] These justifications are lacking in the context of a cohabitation relationship, however, and this lack of justification with respect to children born out of wedlock fatally undermines the case for extending equitable parenthood outside the context of marriage.

Accordingly, we conclude that Mr. Van's equitable parenthood claim fails.

### B. EQUITABLE ESTOPPEL

Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts. [*Soltis v First of America Bank—Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994).]

The Court of Appeals has repeatedly applied this doctrine to estop a husband from denying paternity of a child born during marriage, but of whom he is not the biological father.[7] See, e.g., *Johnson v Johnson*, 93 Mich App 415; 286 NW2d 886 (1979), *Nygard v Nygard*, 156 Mich App 94; 401 NW2d 323 (1986), and.

---

[6] While equitable parenthood appears consistent with the recognized presumption of legitimacy and § 111, we question whether it was proper for the judiciary, as opposed to the Legislature, to adopt this doctrine. However, the present case does not involve a married couple. Accordingly, it does not squarely raise the issue whether equitable parenthood was appropriately adopted as a common-law doctrine, and we leave that issue for another day.

[7] As was the case with equitable parenthood, application of this doctrine in the context of a marriage is consistent with the presumption of legitimacy. While we nonetheless question whether it is appropriate for the judiciary, as opposed to the Legislature, to adopt this doctrine, the present case does not present application of equitable estoppel in the context of a child born during a marriage; accordingly, we will not decide that issue here.

*Johns v Johns,* 178 Mich App 101; 443 NW2d 446 (1989).

The question before us is whether to extend the doctrine of equitable estoppel outside the context of marriage. As discussed above, the primary reason we will not extend this doctrine here is that the Child Custody Act, which comprehensively governs child custody matters, does not recognize it.

However, the Court of Appeals extended equitable estoppel outside the context of marriage in *Guise, supra,* 219 Mich App 146-147, in which it held:

> The present matter may be distinguished from the cited cases on the basis that here the parties were never married to each other. However, this is a distinction without a difference with respect to the elements of equitable estoppel. The cited cases emphasized the length of time during which the putative father held himself out as a father rather than the existence of a marriage relationship in finding estoppel.

This conclusion by the *Guise* Court failed to acknowledge that the presumption of legitimacy is one of the means by which a husband holds "himself out as a father" of a child born during the marriage. Application of equitable estoppel in the context of marriage is based in part upon the presumption of legitimacy. This fact militates against extension of equitable estoppel outside the context of marriage and demonstrates that such an extension implicates the state's public policy in favor of marriage. The judiciary is not the appropriate entity to extend a doctrine rooted in marriage to cover situations where there is no marriage. Thus, *Guise* was wrongly decided and is overruled.

Accordingly, we conclude that Mr. Van's equitable estoppel claim fails as a matter of law.

CONCLUSION

For all these reasons, we conclude that the Legislature, not the judiciary, is the appropriate entity to weigh the sensitive public policy issues involved in creating or extending parental rights to persons with no biological or marital link to a child. Therefore, we will not extend the doctrines of equitable parenthood or equitable estoppel outside the context of marriage. We accordingly affirm the Court of Appeals decision, which affirmed the trial court's grant of Ms. Zahorik's motion for summary disposition.

The present case presents tragic circumstances: the children were suddenly separated from Mr. Van, the only father they had known; Mr. Van lost contact with the children whom he helped raise and support; and Ms. Zahorik only belatedly introduced the biological fathers into the picture. However, the current state of child custody law simply provides no means for Mr. Van, who is not related to the children at issue either biologically or by marriage, to pursue parental rights under either equitable parenthood or equitable estoppel. In short, he has no *legal right* to continue a relationship with the children. Of course, there is also no legal prohibition against Mr. Van and the children maintaining a relationship. It is well to recall, in the context of an extended custody dispute, what Judge YOUNG aptly observed:

> It remains to be seen whether history will also record that they were as faithful to and as invested in their parental duties as they have been devoted to conducting their internecine legal war of attrition. [*Fletcher v Fletcher*, 229 Mich App 19, 21; 581 NW2d 11 (1998).]

Bearing this in mind, we hope that Ms. Zahorik will proceed with the children's best interests in mind.

The Court of Appeals decision is affirmed.

WEAVER, C.J., and CORRIGAN and YOUNG, JJ., concurred with TAYLOR, J.

BRICKLEY, J. (*dissenting*). Like the majority, I agree that "[t]he present case presents tragic circumstances." *Ante* at 337. I disagree, however, that "the current state of child custody law simply provides no means" for plaintiff to pursue parental rights, and I, therefore, respectfully dissent. *Id.* I would hold that, on this record, plaintiff has a legal stake in continuing the relationship he began with Zachary and Alicia at the time of their births, and, to that end, I agree with Justice KELLY's dissenting opinion that this case be remanded to the trial court.

To say that this case does not involve delicate and complex questions of legal doctrine and policy would be disingenuous. Unfortunately, the majority's approach creates an all-or-nothing resolution of such conflicts, in that it focuses on the adult's marital status and "legal" relationship with the child, but ignores the equitable considerations presented by this case. The majority's approach is particularly inadequate, as it devalues the importance of the child's personal relationship with the putative father.

As a preliminary observation, the issue in this case is not, or at least should not be, sexual relationships or the marital status of the parties. Those factors should be considered, if at all, during a best interests hearing conducted by the circuit court pursuant to MCL 722.23; MSA 25.312(3). Rather, this Court's focus should be on the innocent victims in this case, and many others like them: the children of dissolving nonmarital relationships. The issue is the best inter-

ests of these children and the role of the court in protecting them.

The deficiency in the majority opinion is the Court's utilization of an adult-centered approach to resolve a dispute that primarily affects the lives and development of the children. Because children do not participate in the formation of their biological or legal child-parent relationships, they are wholly blameless for the shortcomings of their relatives—legal, biological, or otherwise. By placing an artificial restriction on the definition of "parent," the majority absolves itself from addressing, as mandated by the Legislature, the organizing principle of the Child Custody Act: the best interests of the child.

The Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, does not define the term "parent," nor does it place a clear limitation on the right of biological strangers asserting parental rights from bringing custody actions. In the absence of a statutory definition of "parent" (which the Legislature could have expressly limited to adoptive or natural parentage), I cannot share the majority's conclusion that plaintiff is somehow transformed into a "third party." Black's Law Dictionary refers to "parent" as comprehending "much more than [the] mere fact of who was responsible for [a] child's conception and birth," and is instead one who "share[s] mutual love and affection with a child and who suppl[ies] child support and maintenance, instruction, discipline and guidance."[1]

---

[1] Black's Law Dictionary (6th ed), p 1114, citing *Solberg v Metropolitan Life Ins Co*, 50 Wis 2d 746, 753; 185 NW2d 319 (1971). See also *American Heritage Dictionary* (3d ed), p 1315 ("[o]ne who begets, gives birth to, *or nurtures and raises a child"*).

I agree with the majority that, in most cases, a narrow interpretation of the statutes conferring jurisdiction and standing to assert rights to custody and visitation is warranted.[2] Significantly, however, the Legislature has not limited the status of legal parent to those with a biological, adoptive, or marital tie to a child, nor is there any indication that it intended that the Child Custody Act supplant or preempt the subject of visitation or the equitable powers of the circuit court to determine visitation under circumstances not *expressly* included within the statute. As Justice KELLY observes, § 6 provides that the act is "equitable in nature" and is to be "liberally construed." *Post* at 343. Moreover, the best interests factors set forth in § 3 not only represent an equitable standard providing courts great latitude in protecting children, but § 5 clearly articulates a policy directing a court to consider the matters before it *from the child's perspective*:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence. [MCL 722.25(1); MSA 25.312(5)(1).][3]

---

[2] The majority cites our decision in *Bowie v Arder*, 441 Mich 23; 490 NW2d 568 (1992), wherein we, inter alia, denied standing to a third party seeking custody. Given the factual context in *Bowie*, our holding does not control the present case: *Bowie* involved *third parties* (grandparents) who were never under the belief that they were the natural parents, nor, more significantly, were the children under the belief that they were their parents.

[3] As Judge MARKMAN observed in *York v Morofsky*, 225 Mich App 333, 338; 571 NW2d 524 (1997):

As I understand the majority opinion, as long as a petitioner is married to the biological mother, no matter how brief the duration of the marriage (a day, a week, a year?), the doctrine of equitable parenthood may be applied.[4] The majority's formulation that the equitable parenthood doctrine exists in the context of marriage contradicts its contention that the Legislature has "occupie[d] the field" in child custody matters, thereby precluding equitable considerations. *Ante* at 331. The majority also finds, without further explanation, that Michigan's public policy favoring the institution of marriage supersedes the Legislature's express directive that the "best interests" of the child control.[5] Examined from the standpoint of the child,

---

The child's best interests are also of major concern in determining whether a party is an equitable parent . . . . Stability in acknowledged parent-child relationships is generally in the child's best interests.

[4] I question the majority's statement that the equitable parent doctrine, as formulated in *Atkinson v Atkinson*, 160 Mich App 601; 408 NW2d 516 (1987), is "rooted in marriage." *Ante* at 332. Although it is true that the *Atkinson* decision referred in passing to the fact that the child was conceived and born during the parties' marriage, the Court focused on the notion that

under certain circumstances, a person who is not the biological father of a child may be considered a parent *when he desires such recognition and is willing to support the child* as well as wants the reciprocal rights of custody or visitation afforded to a parent. [*Atkinson* at 610 (emphasis added).]

[5] Defendant proffers a policy argument to the effect that to rule in plaintiff's favor might reduce the amount of love a child needs because a custodial parent, concerned that a third-party relationship could ripen into a parental relationship, might not allow that contact. Such a contention is not only of dubious merit, but is irrelevant to the extent that it has no application to the instant facts: here, the defendant gave the children the plaintiff's name on the birth certificate, led the plaintiff for years to believe that he was their parent, and filed a paternity action against the plaintiff (although later withdrawing it when the plaintiff's blood tests were completed).

whom the Legislature deems most important, I cannot agree with the majority's elevation of marriage as the sole relevant consideration. Such a formulation penalizes children for a decision by two unmarried adults to live together without the formality of marriage.

In sum, it bears emphasizing that granting plaintiff relief at this juncture does not *mandate* access to Zachary and Alicia. To the contrary, the decision to grant or deny visitation is the province of the circuit court, and only after deliberate consideration of what is in the best interests of the children. As used here, the Legislature enacted a standard involving competing goals and interests in which the "child's interest" denotes a straightforward idea: a child's stake in maintaining a relationship with an adult the child was told was a parent. The equitable parenthood doctrine best serves the child's interests by focusing on two criteria: the "nonbiological parent's" *actual performance* of parenting functions and the child's view of that adult as a parent. Moreover, equitable parenthood permits a court to protect the interests of a biological parent's autonomy by focusing on the actions and intent of that parent in creating a parental relationship.

I would remand this case to the circuit court for a determination of Zachary and Alicia's best interests.

CAVANAGH, J., concurred with BRICKLEY, J.

KELLY, J. (*dissenting*). I disagree with the majority's decision not to extend the equitable parent doctrine to reach the circumstances of this case. I would find plaintiff to be the equitable parent of Alicia Marie Van and Zachary Scott Van. I would remand the case to the trial court with instructions to provide appropri-

ate custody and parenting as befits the children's best interests.

The majority states that, with the promulgation of the Child Custody Act,[1] the judiciary is not the proper entity to create new rights or extend theories to reach new situations. However, the act explicitly provides that it is "equitable in nature" and its provisions are to be liberally construed. MCL 722.26; MSA 25.312(6). A liberal construction of it supports a finding that this Court is well within its power to expand the equitable parenthood doctrine to a situation such as is presented here.

The majority accurately notes that the Child Custody Act does not contain a specific provision allowing a person in Mr. Van's circumstances to pursue rights under a theory of equitable parenthood. The majority observes that, because the Child Custody Act defines the rights of a "third person" under MCL 722.26c; MSA 25.312(6c), Mr. Van is ineligible to bring an action to pursue parental rights here. It states that the act addresses the rights of "biological parents." It does not. In fact, it says nothing about "biological" parents. It does not so much as define the word "parent."

The doctrine of equitable parenthood allows the court to decide who is a "parent" for purposes of the act. Thus, should this Court decide that Mr. Van is an equitable parent, he would be accorded "parental" status and fall within the provisions allowing him to seek custody of the children.

Moreover, the statute specifically provides even third parties the opportunity to seek reasonable

---

[1] MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*

parenting time. MCL 722.27(1); MSA 25.312(7)(1) states in pertinent part:

> If a child custody dispute has been submitted to the circuit court as an original action under this act *or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court,* for the best interests of the child the court may do 1 or more of the following:

> \*      \*      \*

> (b) provide for reasonable parenting time of the child by the parties involved, by the maternal or paternal grandparents, or by others, by general or specific terms and conditions. [Emphasis added.][2]

Under MCL 722.23; MSA 25.312(3), a trial court is given extremely broad latitude in deciding what is in the best interest of the child.[3] The plain language of

---

[2] The majority maintains that the Child Custody Act is not implicated because there is no active custody dispute between Ms. Zahorik and the biological fathers of the children. This ignores the plain language of MCL 722.27; MSA 25.312(7). In this case, the dispute at issue arose from defendant's filing of a paternity action against plaintiff on March 25, 1996. Whether plaintiff would originally have had standing to seek custody of the children is irrelevant. Once defendant filed her paternity suit, the questions of custody and visitation arose incidentally to the necessity of deciding the rights of the parties.

[3] MCL 722.23; MSA 25.312(3) provides that, to determine the "best interests of the child," a trial court is to consider:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) *The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.*

two provisions, in conjunction with the wording in MCL 722.26; MSA 25.312(6), demonstrates that the Legislature fully recognized the courts of Michigan as necessary to defining the process.

The Legislature is ill-equipped to deal with the myriad situations in which children find themselves. It has long been a foundational tenet of American jurisprudence that, when legal remedies prove inadequate to solve a problem, society looks to the doctrine of equity and the courts.

Indeed, as this Court has previously emphasized:

> One of the glories of equity jurisprudence is that it is not bound by the strict rules of the common law, but can mold its decrees to do justice amid all the vicissitudes and intricacies of life. The principles upon which it proceeds are eternal; but their application in a changing world will necessarily change to meet changed situations. If relief had been granted only where precedent could be found for it, this great system would never have been developed; and, if such a narrow view of equitable powers is adopted now, the result will be the return of the rigid and unyielding system which equity jurisprudence was designed to remedy. [*Spoon-Shacket Co, Inc v Oakland Co*, 356 Mich 151, 163; 97

---

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any *other factor considered by the court to be relevant* to a particular child custody dispute. [Emphasis added.]

NW2d 25 (1959), citing *Bowen v Hockley*, 71 F2d 781, 786; 94 ALR 856 (CA 4, 1934).]

Currently, a man who is not the biological father of a child may be considered a parent if he desires such recognition and is willing to support the child. *Atkinson v Atkinson*, 160 Mich App 601, 608-609; 408 NW2d 516 (1987). Admittedly, concerns regarding the sanctity of marriage could be tangentially affected by an extension of the equitable parenthood doctrine to situations arising outside a marriage.

However, when child custody or visitation is at issue, the Legislature has decreed that the overriding concern is not the ultimate preservation by the state of the institution of marriage.[4] It is, instead, the attainment of the best interests of the children. *Id.* at 611; MCL 722.27; MSA 25.312(7). Keeping that overriding interest firmly in mind, I would expand the doctrine of equitable parenthood to cover the circumstances in this case.

The fact that defendant and plaintiff were not married when Alicia and Zachary were born should not preclude a finding that plaintiff was their equitable parent. Plaintiff considers them to be his children. Indeed, until March of 1996, he was the only father the children had ever known. Plaintiff obviously desires to continue to exercise the rights afforded to a parent, having been actively involved in their lives since birth.

---

[4] Indeed, as Justice BRICKLEY so eloquently notes, the majority mistakenly stresses Michigan's public policy favoring marriage, yet provides no statutory support. The distinction the majority draws seems to be a purely arbitrary one. It has effectively trumped the statutory "best interests" test with general public policy to promote marriage, and punishes the children for plaintiff and defendant's failure to marry.

Moreover, defendant encouraged the development of a parent-child relationship by filing a paternity action naming plaintiff as the father of both children on March 25, 1996. Defendant swore under oath that plaintiff was the father of the two children. The children bear his name. Also, there is every indication that plaintiff is most willing to continue to support the children, both financially and emotionally.

The majority attempts to appeal to the defendant's kinder nature in hoping that she will grant plaintiff the ability to reestablish contact with Zachary and Alicia. Although this sentiment is admirable, it does not replace what I see as this Court's duty to involve itself in equitable matters such as this one. The children's opportunity to continue a nurturing familial relationship with plaintiff should not be left to the whim of defendant, perhaps to be used as a carrot or a stick. Such a result is not in their best interests.

I would, therefore, find that plaintiff is the equitable parent of Zachary and Alicia. I would remand the case to the trial court with instructions to decide appropriate custody and parenting time following the trial court's determination of the children's best interests.